IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMORY G. SNELL, JR., | |
| Plaintiff, | C.A. No.: 1:16-cv-11643-DJC |
| v. | Hon. Denise J. Casper |
| CAROL MICI, individually and in her official capacity, STEPHANIE COLLINS, individually and in her official capacity, JEFFREY QUICK, individually and in his official capacity, MONSERRATE QUINONES, individually and in her official capacity, DOUGLAS DEMOURA, individually and in his official capacity, LOIS RUSSO, individually and in her official capacity, DALE BISSONNETTE, individually and in his official capacity, PATRICIA RUZE, individually and in her official capacity, GENE CHAISSION, individually and in her official capacity, JOANN LYNDS, individually and in her official capacity, THOMAS NEVILLE, individually and in her official capacity, and the MASSACHUSETTS DEPARTMENT OF CORRECTION, | Redacted Document[1] |
| Defendants. | |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Emory G. Snell, Jr., by his undersigned attorney, brings this civil rights action to obtain redress for past and ongoing constitutional deprivations and violations of law:

### INTRODUCTION

1.     Plaintiff is a qualified individual with a disability under federal and Massachusetts law, entitling him to reasonable accommodations in any public facility, including state-run prisons.

---

[1] Pursuant to LR 5.3, personal data identifiers are redacted from the allegations made herein.

2.      Plaintiff brings this civil lawsuit to remedy the unreasonable, dangerous, discriminatory, and unconstitutional conditions of his confinement at the Massachusetts Correctional Institution at Concord ("MCI-Concord"), a level 4, medium security state prison.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over the claims brought under Massachusetts law pursuant to 28 U.S.C. § 1367.

4.      Venue is properly in this Court, pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), because Plaintiff's claims for relief arose in this District and one or all Defendants reside in this District.

## PARTIES

5.      Plaintiff Emory G. Snell, Jr. is an inmate residing at MCI-Concord, located at 965 Elm Street in Concord, Massachusetts.

6.      Defendant Massachusetts Department of Correction ("DOC") is responsible for operating the prison system of the Commonwealth of Massachusetts.  Defendant DOC manages and operates 17 correctional facilities across Massachusetts, including MCI-Concord.

7.      Defendant Carol Mici is or was employed by Defendant DOC as the Deputy Commissioner, Office of Classification.

8.      Defendant Stephanie Collins is or was employed by Defendant DOC as Assistant Deputy Commissioner of the Health Services Division, Office of the Deputy Commissioner of Clinical Services and Reentry.

9.      Defendant Jeffrey Quick is or was employed by Defendant DOC as Director of Resource Management.

10.     Defendant Monserrate Quinones is or was employed by Defendant DOC as ADA Coordinator and Director, Office of Diversity and Equal Opportunity.

11.     Defendant Douglas Demoura is or was employed as the Superintendent of MCI-Concord.

12.     Defendant Lois Russo is or was employed as the Deputy Superintendent at MCI-Concord.

13.     Defendant Dale Bissonnette is or was employed as the Deputy Superintendent of Programs at MCI-Concord.

14.     Defendant Patricia Ruze is or was employed as the Medical Director at MCI-Concord.

15.     Defendant Gene Chaission is or was employed as the Clinical Administrator at MCI-Concord.

16.     Defendant Joann Lynds is or was employed as the Director of Classification at MCI-Concord.

17.     Defendant Thomas Neville is or was employed as the Deputy of Administration at MCI-Concord.

18.     Defendants Mici, Collins, Quick, and Quinones (collectively, the "DOC Defendants") are among the staff designated by 103 DOC 408 as responsible for implementing and monitoring DOC's policies and practices concerning reasonable accommodations for inmates with a disability, including at MCI-Concord.

19.     Defendants Demoura, Russo, Bissonnette, Ruze, Chaission, and Lynds (collectively, the "MCI Defendants") each are or were employed by MCI-Concord in or after 2010.

20.     The DOC Defendants and MCI Defendants each was involved, directly or indirectly, individually or jointly, in the provision and/or rescission of Plaintiff's reasonable accommodations, as described herein.

## FACTS

**A.  Plaintiff's Conviction and History of Incarceration**

21.     Plaintiff is a disabled Vietnam-era veteran and father of two adult children.  He was honorably discharged from the United States Navy in or around April 1975.

22.     Ten (10) years after his discharge from the Navy, Plaintiff relocated to Yarmouth, Massachusetts, where he launched and operated a commercial and residential construction business serving customers on Cape Cod and the Islands and throughout New England.

23.     In February 1995, Plaintiff married Elizabeth Lee, a surgical nurse at Falmouth Hospital and part-time employee of a local realtor.

24.     On March 19, 1995, Massachusetts State Police arrested Plaintiff in West Springfield, Massachusetts on charges of murdering Ms. Lee on March 18.

25.     During his arraignment in Barnstable Superior Court on March 20, 1995, Plaintiff pled not guilty.  His case was fast-tracked and in September of that year, a jury convicted Plaintiff of first-degree murder.  Within 165 days of his arrest, Plaintiff was sentenced to natural life in prison without the possibility of parole.

26.     Plaintiff was 39 years of age when he was imprisoned.  He has served 21 years of his life sentence, throughout which he has maintained his innocence.

27.     Between September 1995 and 2010, Plaintiff was incarcerated and transferred between multiple state correctional facilities; namely, the Massachusetts Correctional Institution at Cedar Junction, formerly known as MCI-Walpole (hereinafter, "MCI-Cedar Junction"), the

4839-1261-4461.7

Souza-Baranowski Correctional Center in Shirley ("SBCC"), and Old Colony Correctional

Center in Bridgewater.  Beginning in July 2010, Plaintiff was committed to MCI-Concord.

28.    Defendant DOC established the policies for and managed each of the above-

named correctional facilities before and throughout Plaintiff's incarceration.

29.    Each facility managed by Defendant DOC is a public facility, which is funded, in

whole or in part, by state and/or federal tax dollars.

### B. Plaintiff's Documented History of Physical Disability and Impairments

30.    Before and throughout his incarceration, Plaintiff has been disabled and suffered

from a variety of impairments, including chronic obstructive pulmonary disease, asthma, lower

back arthritis, and persistent joint pain.  These conditions largely stemmed from injuries Plaintiff

sustained during his military service and his construction business.

31.    Plaintiff has been physically examined by Correction Medical Services ("CMS")

on multiple occasions in different institutions.  CMS was (or was the predecessor to) the third-

party provider of behavioral health and medical specialty services to most Massachusetts prisons

and jails, including MCI-Cedar Junction and SBCC in the late 1990s.

32.    On or about February 14, 1997, CMS personnel at MCI-Cedar Junction

performed a medical restrictions/special needs screen of Plaintiff, who was experiencing pain

and reduced mobility following years of worsening degenerative joint disease ("DJD") and

lumbar spinal stenosis ("LSS").  *See* Physician's Order, attached as Exhibit A.

33.    Following his February examination, CMS placed Plaintiff under medical

restrictions/special needs due to lower back arthritis.  *See* Medical Service Provider Form,

attached as Exhibit B.  The restrictions were approved effective February 14, 1997 for an

"indefinite" period:

*Id.*

34.     On or about October 10, 1997, Plaintiff was prescribed 500 mg of Naproxen, a

nonsteroidal anti-inflammatory drug, twice daily for lower back pain and was prevented from

working.  *See* Physician's Order, attached as Exhibit C.

35.     On or about December 21, 1998, CMS staff at SBCC evaluated Plaintiff and

again approved and ordered "indefinite" medical restrictions/special needs for "medical

conditions" that qualified Plaintiff for "bottom tier" housing:

6

CORRECTIONAL MEDICAL SERVICES
MEDICAL RESTRICTIONS   N-1   SBCC
INSTITUTION

NAME: Emory Snell   ID #: WS9191   D.O.B.

DATE: 12/21/98

TO: _____ (D.O.C. DESIGNEE)

The above named inmate has been determined to have the following needs/restrictions due to a current medical condition:

| TYPE: | DATE | (FROM) | TO |
|---|---|---|---|
| NO WORK STATUS | | | |
| LIGHT WORK STATUS | | | |
| BOTTOM BUNK | | | |
| SPECIAL EQUIPMENT (DESCRIBE BELOW) | | | |
| Bottom tier OTHER (DESCRIBE BELOW) | 12/21/98 | | indf |

TRANSPORTATION RESTRICTIONS:

NO WAISTCHAINS
NO HANDCUFFS
NO ANKLE RESTRAINTS
VEHICLE WITH CAR SEATS
MEDICAL VAN

MEDICAL REASON:
1st documented @ MCI-CJ  I/m has problems c stairs.
climbing + self medical problem

SUBMITTED BY: CR/mamnuokas   NOP/PA   DATE: 12/21/98   TIME: 2pm

REVIEWED BY: ADELE E. FAJANA, M.D.   HSA   DATE: 12/14/98   TIME: 1:00

APPROVED BY: _____   SITE MEDICAL DIRECTOR   DATE: 12/24/98   TIME: 12 pm

*See* Medical Service Provider Form, attached as Exhibit D.

36.    From 1998 forward, Plaintiff's DJD and LSS progressed, all but eliminating Plaintiff's mobility and eventually requiring him to use numerous medical appliances to access existing prison programs, activities, and services, including but not limited to MCI-Concord's library and legal reference materials.

37.    Plaintiff for years has relied on the use of "special medical needs appliances" for walking and regular activities of daily living within MCI-Concord.  *See* Inmate Medical and

7

4839-1261-4461.7

Mental Health Grievance & Appeal Form, attached as Exhibit E.  These appliances include knee and elbow sleeves, anti-embolism stockings, a cane, and a back brace, which are meant to slow the progression of Plaintiff's osteoarthritis and swelling in his extremities.  *See* "Massachusetts Department of Correction – Medical Restrictions – W_MED_MRE," attached as Exhibit K.

### C.  Plaintiff is Entitled to Reasonable Accommodations Under Federal and Massachusetts Law and DOC Policy

38.     The rights of disabled prisoners are protected by Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794(a), and by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq.

39.     Under the ADA, "[t]he term 'disability' means, with respect to an individual . . . a physical or mental impairment that substantially limits one or more major life activities of such individual . . . a record of such an impairment; or . . . being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C).

40.     The RA defines "the term 'individual with a disability' [as] any person who has a disability as defined in [42 U.S.C. § 12102(1)]".  29 U.S.C. § 705(20)(B).

41.     Massachusetts' antidiscrimination law likewise defines "[t]he term 'handicap' [to] mean[] (a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment, but such term shall not include current, illegal use of a controlled substance as defined in section one of chapter ninety-four C."  Mass. Gen. Laws c. 151B, § 1.

42.     Plaintiff's physical impairment, described herein, substantially limit his major life activities because it prevents or severely restricts him from performing tasks of central importance to daily life—*viz.*, standing, working, walking, or movement.  Plaintiff thus is disabled within the meaning of the ADA, RA, and Massachusetts law.

43.     The ADA, RA, and Massachusetts law each prohibit discrimination on the basis of disability.

44.     The ADA states: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

45.     Similarly, the RA states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).

46.     Article 114 of the Amendments to the Massachusetts Declaration of Rights provides that "[n]o otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the [C]ommonwealth."

47.     And, indeed, "[i]t is the policy of the [DOC] to ensure that existing programs in established institutions and facilities under the direction of the Commissioner of Correction, are readily accessible and usable by inmates with special needs," and that "[p]rograms, activities and services will operate in a manner which provides for the full and nondiscriminatory participation of an inmate with special needs," including "a special need due to a physical or mental state, that amounts to a limitation or impairment in everyday activities, whether claimed as a disability under the Americans with Disabilities Act or not . . . ."  103 DOC 207.01(1), (2), and (4) (2005); *see also* 103 DOC 408.01 (2016) ("It is the Department's policy not to discriminate against any

person protected by the Americans with Disabilities Act (ADA).  The Department shall ensure

that its programs, activities and services, when viewed in their entirety, are readily accessible to,

and usable by, inmates who are disabled."); 103 DOC 108.01(3) (2015) ("It is the policy of the

Department to ensure that existing programs in established institutions and facilities under the

direction of the Commissioner, are readily accessible and usable by disabled persons . . . .").

48.     The "responsible staff for implementation and monitoring [of the above]

polic[ies]" include: Deputy Commissioner of Clinical Services & Reentry, Assistant Deputy

Commissioner of Clinical Services, Department ADA Coordinator for Inmates, Director of

Resource Management, Director of Diversity and Equal Opportunity, Superintendents, Deputy

Superintendents, and Institution ADA Coordinators.  103 DOC 108; 103 DOC 408; 103 DOC

207.

49.     A "qualified individual with a disability"

> means an individual with a disability who, with or without reasonable
> modifications to rules, policies, or practices, the removal of architectural,
> communication, or transportation barriers, or the provision of auxiliary aids and
> services, meets the essential eligibility requirements for the receipt of services or
> the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

50.     Plaintiff is a qualified individual with a disability consistent with § 12131(2)'s

definition because, "with . . . reasonable modifications to rules, policies, or practices," he "meets

the essential eligibility requirements for the receipt of services or the participation in programs or

activities provided by a public entity."

51.     MCI-Concord is a "public entity" under the ADA because it is a "department,

agency, special purpose district, or other instrumentality of a State . . . or local government."  42

U.S.C. § 12131(1)(B).

52.     By law, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . . ."  28 C.F.R. § 35.130(b)(7)(i).

**D.  Conditions of Plaintiff's Confinement at MCI-Concord**

53.     Plaintiff's conditions have deteriorated and continue to deteriorate following the confiscation of his medical appliances and the rescission of his first-floor housing, bottom bunk assignment, and other accommodations previously provided to Plaintiff at MCI-Concord in recognition of his medical restrictions/special needs.

54.     Before and at all times after Plaintiff's transfer to MCI-Concord, the MCI Defendants knew or should have known of Plaintiff's medical history, including all previously recorded prison medical examinations, diagnoses, prescriptions, and approved medical restrictions/special needs.

55.     When Plaintiff arrived at MCI-Concord, prison authorities assigned him to a "handicapped cell" and "bottom-tier housing status" due to his medical restrictions/special needs, as alleged above.

56.     Between July 2013 and October 2015, Plaintiff had access to and made use of MCI-Concord's first-floor general population library.

57.     Defendants' provision of accommodations to Plaintiff reflected their awareness that failing to accommodate Plaintiff's disability could adversely impact Plaintiff's health and block his access to prison facilities, programs, and/or services.

58.     Before 2015, none of the MCI Defendants, DOC Defendants, or anyone else:

   a.   questioned or challenged Plaintiff regarding the nature or extent of his disability;

11

b.  argued against the reasonable accommodations provided to Plaintiff in conjunction with Plaintiff's medical restrictions/special needs approved for an indefinite period in 1997 and 1998;

c.  suggested to Plaintiff that the reasonable accommodations provided to him (i) imposed undue financial and administrative burdens; (ii) posed significant health and safety risks; or (iii) fundamentally altered the nature of any service, program, or activity;

d.  identified a legitimate penological interest hindered or affected by Plaintiff's reasonable accommodations; or

e.  performed or arranged for a reevaluation of Plaintiff's disability to gauge its severity and limiting effects.

59.  In fact, nothing about Plaintiff's disability resolved or improved in or after 2015.

60.  Beginning in or around October 2015, however, the MCI Defendants and other prison authorities deliberately and without justification began to exclude Plaintiff from MCI-Concord's first-floor library and reassigned him to an upper bunk in a non-handicapped cell on upper-tier housing.

61.  During the same period, disabled prisoners other than Plaintiff were allowed ready access to the first-floor library and assigned a handicapped cell on lower-tier housing.

62.  From that point forward, the MCI Defendants and other prison authorities restricted Plaintiff to the second-floor library (Law Library # C2-23), despite knowing of his medical restrictions/special needs.

63.  The MCI Defendants effectively forced Plaintiff to choose between exercising his constitutionally protected right of access to legal reference materials or suffering excruciating

4839-1261-4461.7

pain from the aggravation of his DJD, LSS, and related medical conditions for which he originally was placed under medical needs restrictions.

64.    The DOC Defendants controlled, directed, and/or approved of the MCI Defendants' conduct in stripping Plaintiff of the ADA accommodations previously afforded to him.

65.    Moreover, by essentially forcing Plaintiff to traverse two flights of stairs at least twice each day to perform legal research, the MCI Defendants caused and are causing Plaintiff to endure intense pain from the aggravation of his DJD, LSS, and other medical conditions, placing him under imminent danger of serious physical injury, including but not limited to loss of bladder and bowel function, joint stiffness, enlargement, and/or degeneration, crepitus, bone marrow edema, synovitis, greater susceptibility to bone breaks or fractures, debilitating pain, muscle weakness, decreased function, and ultimately a complete loss of movement.

66.    The precipitous decrease in mobility for Plaintiff, who is 63 years of age and asthmatic, poses an increased risk of cardiovascular complications, heart disease, diabetes, and other negative health effects.

67.    Since 2013, Plaintiff repeatedly has requested, orally and in writing, that the MCI Defendants and DOC Defendants ensure—and, where appropriate, reinstate—his reasonable accommodations to ensure both Plaintiff's safety and ready, equal access to MCI-Concord's facilities, programs, and services.

68.    Below is a representative sample of the written requests and notices Plaintiff provided to the following individuals (or their agents or subordinates) at least since January 2013:

| **Date of Plaintiff's Written Complaint or Notice** | **Recipient(s)** |
|---|---|
| January 18, 2013 | DOC; Lois Russo |
| December 2, 2013 | Thomas Dickhaut; Dale Bissonnette; Thomas Groblewski |
| December 4, 2013 | DOC; Kimberly Villare; Michael Thompson |
| July 14, 2014 | DOC; Dale Bissonnette |
| July 22, 2014 | DOC; Thomas Groblewski |
| June 23, 2015 | DOC; Marcelo Silva |
| August 29, 2015 | DOC; Lois Russo |
| November 5, 2015 | DOC |
| November 6, 2015 | DOC; Marcelo Silva |
| November 30, 2015 | DOC; Lois Russo |
| January 27, 2016 | DOC; Rachel Goguen; Marcelo Silva; Lois Russo |
| February 10, 2016 | DOC; Marcelo Silva |
| February 23, 2016 | William Devine |
| April 16, 2016 | William Devine |
| April 21, 2016 | Thomas Groblewski |
| May 24, 2016 | William Devine |
| June 29, 2016 | DOC; Thomas Neville |
| October 20, 2016 | DOC; Therese Smith |
| November 1, 2016 | DOC; Therese Smith |
| November 4, 2016 | Douglas Demoura |
| November 13, 2016 | DOC |
| November 21, 2016 | DOC; Marcelo Silva |
| November 26, 2016 | Douglas Demoura |

69.     Plaintiff's complaints and numerous requests to reinstate his reasonable accommodations have been denied, and his medical conditions have deteriorated in the process.

70.     Plaintiff also repeatedly has sought to reinstate his reasonable accommodations pursuant to Defendant DOC's procedures for inmate grievances.

71.     On November 6, 2015, for example, Plaintiff filed an unsuccessful grievance contesting the revocation of his "handicapped" accommodations, including the loss of first-floor library access.  *See* Inmate Grievance & Appeal Form, attached as Exhibit F.

72.     On November 30, 2015, Plaintiff appealed the denial of his grievance, again requesting that the MCI Defendants "re-instate [sic] those 'reasonable ADA/RA

accommodations,' that afformed me . . . effective and meaningful court access," previously provided "for nearly (2) plus years prior to Oct. 29, 2015." *See id.*

73.     On December 8, 2015, Defendant Russo denied Plaintiff's appeal, in part because "medical staff advise that you have no medical issue that would preclude your use of stairs at this time." *Id.*

74.     Indeed, the MCI Defendants and/or DOC Defendants have on several occasions attempted to justify their refusal to reinstate the reasonable accommodations previously afforded to Plaintiff on a purported lack of medical need.

75.     For example, Defendant Russo had advised Plaintiff in 2013 that "[y]our previous medical restrictions expired on 10/15/08." *See* Exhibit G.

76.     In 2015, Defendant Russo advised Plaintiff that "[m]edical staff have indicated that you do not have any medical restrictions with regard to stairs." *See* Exhibit H.

77.     Plaintiff's medical restrictions/special needs, however, were approved in 1997 and 1998 for an "indefinite" period and specifically referenced difficulty climbing stairs:



*See* Exhibit D.

78.     Plaintiff's disability and physical impairments have not improved but only worsened since 1998.

79.     Even now, Plaintiff continues to be subject to unreasonable (and unconstitutional) restrictions at MCI-Concord, which are divorced from any legitimate penological interest and threaten Plaintiff with imminent danger of serious physical injury.

15

80.     Most recently, on or about November 22, 2016, the MCI-Defendants notified Plaintiff that his legal documents, including research materials and attorney correspondence, would be moved to second-floor L-3 storage, further preventing Plaintiff from researching the legal options available to him for challenging the legality of his conviction and conditions of confinement.

**E.   Defendants' Misconduct is Obstructing Plaintiff's Constitutionally Protected Right to Court Access**

81.     Plaintiff's lack of access to legal reference materials at MCI-Concord is unnecessarily and improperly delaying his ability to challenge his conviction based on newly discovered, *i.e.*, previously undisclosed, forensic evidence.

82.     In late 2005, Barnstable County Superior Court Judge Richard F. Connon granted Plaintiff's Motion for Written Discovery from the Massachusetts Office of the Chief Medical Examiner ("OCME").  *See* Order, *Commonwealth v. Snell*, No. 46579 (Barnstable Cty. Sup. Ct. Dec. 16, 2005), attached as Exhibit I.

83.     Judge Connon ordered the Commonwealth to produce to Plaintiff, *inter alia*,

[a]ll autopsy notes, records and reports; the entire gross anatomic examination, chemical, chromatic, microscopic and serological measurements, readings and studies undertaken or completed that are ancillary to, or in clarification of the conclusions, exclusions or in support of the Commonwealth's medical examiner's trial testimony during the month of August 1995.

*See id*.

84.     Plaintiff subsequently obtained the autopsy materials from OCME on which the Commonwealth's Medical Examiner, Dr. William Zane, relied for his autopsy report and trial testimony.

85.     The Commonwealth had failed or refused to produce these materials to Plaintiff before his criminal trial.

16

86.     These materials were independently examined by multiple forensic pathologists, including OCME's former chief of staff, whose conclusions undermine Plaintiff's guilt.

87.     It is manifestly unjust to delay or deny Plaintiff's opportunity to present this exculpatory evidence.

88.     Most recently, the MCI Defendants—perhaps sensing Plaintiff was considering or, in fact, commencing legal action seeking redress for the violations alleged herein—have opened, reviewed, and copied Plaintiff's incoming legal mail.

89.     This includes, for example, the proposed Amended Complaint the undersigned counsel sent to Plaintiff by overnight mail on December 1.  (*See generally* ECF No. 21).

90.     The envelope addressed to Plaintiff was opened outside his presence and without his consent or knowledge.  *See* Inmate Grievance Form, attached as Exhibit J.

91.     While the enclosed document was marked "PRIVILEGED AND CONFIDENTIAL" and "ATTORNEY-CLIENT COMMUNICATION," the MCI Defendants removed and copied it before delivering an unstapled copy to Plaintiff.  *See id.*

92.     On December 2, Plaintiff filed a formal grievance in response to the violation of his attorney-client privilege.  *See id.*

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Eighth Amendment to the United States Constitution, 42 U.S.C. § 1983)

### Against All Defendants

93.     Plaintiff re-alleges and incorporates by reference herein all allegations pled in paragraphs 1 through 92 above.

94.     Defendants' conduct and inaction demonstrate a deliberate indifference to Plaintiff's medical needs and physical limitations.

95.     At all times relevant to the Complaint, Defendants each were responsible for implementing and monitoring DOC's reasonable accommodation policy.

96.     As alleged herein, beginning in (and since) fall 2015, Defendants, individually and collectively, knew or should have known that they and/or their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional (and physical) injury to Plaintiff and other similarly situated prisoners.

97.     Defendants' response to such knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the misconduct in question; in particular, the arbitrary denial to Plaintiff of reasonable accommodations without regard for Plaintiff's documented disability, physical impairments, health, well-being, or safety.

98.     Defendants' deliberate indifference, among other things, caused Plaintiff severe pain on a daily basis from working, walking, and movement, risking further injury and total immobility.

99.     By their policies and practices described herein, Defendants have subjected and are subjecting Plaintiff to a substantial risk of harm and injury by virtue of his disability.

100.    These policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and they are the proximate cause of Plaintiff's ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.

101.    Defendants have been and are aware of the deprivations complained of herein, and they individually and collectively have condoned, facilitated, or engaged in such conduct.

102.    Plaintiff requests relief as outlined below.

## SECOND CAUSE OF ACTION

### (Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983)

### Against All Defendants

103.    Plaintiff re-alleges and incorporates by reference herein all allegations pled in paragraphs 1 through 102 above.

104.    Defendants' conduct and inaction demonstrate a deliberate indifference to Plaintiff's medical needs and physical limitations.

105.    By their policies and practices described above, Defendants have subjected and are subjecting Plaintiff to a substantial risk of harm and injury from the denial of reasonable accommodations and deliberate indifference to Plaintiff's documented disability and physical impairments and limitations.

106.    These policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and are the proximate cause of Plaintiff's ongoing deprivation of rights secured by the United States Constitution under the Fourteenth Amendment.

107.     Defendants have been and are aware of the deprivations complained of herein, and they individually and collectively have condoned, facilitated, or engaged in such conduct.

108.    Plaintiff requests relief as outlined below.

## THIRD CAUSE OF ACTION

### (Fifth Amendment to the United States Constitution, 42 U.S.C. § 1983)

### Against All Defendants

109.    Plaintiff re-alleges and incorporates by reference herein all allegations pled in paragraphs 1 through 108 above.

110.    By their policies and practices described above, Defendants have subjected and are subjecting Plaintiff to a substantial risk of harm and injury from the denial of reasonable accommodations and deliberate indifference to Plaintiff's documented disability and physical impairments and limitations.

111.    In addition, Defendants have, improperly and without justification, confiscated Plaintiff's property, including medical appliances, legal reference materials, and personal and legal correspondence.

112.    By engaging in the misconduct described herein, Defendants have obstructed Plaintiff's ability to contest the legality of his conviction and conditions of confinement, thereby frustrating his guaranteed right to due process.

113.    The above-referenced policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and they are the proximate cause of Plaintiff's ongoing deprivation of rights secured by the United States Constitution under the Fifth Amendment.

114.     Defendants have been and are aware of the deprivations complained of herein, and they individually and collectively have condoned, facilitated, or engaged in such conduct.

115.    Plaintiff requests relief as outlined below.

20

## FOURTH CAUSE OF ACTION

**(Article of Amendment 114 of the Massachusetts Declaration of Rights; Massachusetts Antidiscrimination Law, Mass. Gen. Laws c. 151B, § 1; Mass. Gen. Laws c. 93, § 103)**

### Against All Defendants

116.   Plaintiff re-alleges and incorporates by reference herein all allegations pled in paragraphs 1 through 115 above.

117.   By their policies and practices described above, Defendants have subjected and are subjecting Plaintiff to a substantial risk of harm and injury from the denial of reasonable accommodations and deliberate indifference to Plaintiff's documented disability and physical impairments and limitations.

118.   These policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and are the proximate cause of Plaintiff's ongoing deprivation of the right to be free from discrimination on the basis of disability, as guaranteed by Article of Amendment 114 of the Massachusetts Declaration of Rights and Mass. Gen. Laws c. 93, § 103.

119.   As described herein, Defendants' conduct has discriminated against and deprived Plaintiff of his rights to participate in a program or activity within the Commonwealth, including but not limited to the fundamental right to access legal reference materials, by virtue of Plaintiff's disability.

120.   Defendants have been and are aware of the deprivations complained of herein, and they individually and collectively have condoned, facilitated, or engaged in such conduct.

121.   Plaintiff requests relief as outlined below.

4839-1261-4461.7

## FIFTH CAUSE OF ACTION

### (Americans with Disabilities Act of 1990, 42 U.S.C. § 12132)

### Against Defendant DOC

122.    Plaintiff re-alleges and incorporates by reference herein all allegations pled in paragraphs 1 through 121 above.

123.    Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

124.    Defendant DOC is legally responsible for all violations of the ADA committed by the MCI Defendants in the course of performing their duties to provide medical services to prisoners at MCI-Concord.

125.    Under the ADA and DOC policy, Defendant DOC must provide prisoners with disabilities reasonable accommodations and modifications, so they can avail themselves of and participate in all programs and activities offered by MCI-Concord.

126.    Plaintiff is a qualified individual with a disability under federal and Massachusetts law.

127.    Plaintiff was excluded from participation in or denied the benefits of services, programs, and/or activities at MCI-Concord and was otherwise discriminated against, including by Defendants':

     a.   failing to "ensure that qualified inmates or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the

22

services, programs, or activities of a public entity, or be subjected to discrimination by any public entity," 28 C.F.R. § 35.152(b)(1);

b.  failing to "ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals," 28 C.F.R. § 35.152(b)(2);

c.  failing to "implement reasonable policies, including physical modifications to additional cells in accordance with the 2010 [accessibility] Standards, so as to ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing," 28 C.F.R. § 35.152(b)(3);

d.  failing or refusing to provide Plaintiff with reasonable accommodations and other services related to his disabilities, as required by 28 C.F.R. § 35.130(a);

e.  denying Plaintiff "the opportunity to participate in or benefit from [an] aid, benefit, or service" provided by the MCI Defendants, 28 C.F.R. § 35.130(b)(1)(i);

f.  failing to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability," 28 C.F.R. § 35.130(b)(7); and

g.  failing to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity," 28 C.F.R. § 35.160(b)(1).

128.     As a result of the above-alleged failures and the policies and practices of

Defendant DOC of discriminating against and failing to provide reasonable accommodations to

Plaintiff because of his disability, Plaintiff does not have equal access to activities, programs,

and services at MCI-Concord for which he is otherwise qualified.

129.     Plaintiff requests relief as outlined below.

## SIXTH CAUSE OF ACTION

### (Americans with Disabilities Act of 1990, 42 U.S.C. § 12203)

### Against All Defendants

130.     Plaintiff re-alleges and incorporates by reference herein all allegations pled in

paragraphs 1 through 129 above.

131.     Under the ADA, "[n]o person shall discriminate against any individual because

such individual has opposed any act or practice made unlawful by this chapter or because such

individual made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this chapter."  42 U.S.C. § 12203.

132.     Defendants operate and are employed by MCI-Concord, a "public entity" under

the ADA.  *See* 42 U.S.C. § 12131(1)(B).

133.     Plaintiff has made many requests and advocated for the reinstatement of the

reasonable accommodations previously made available to him and restoration of Plaintiff's

access to legal reference materials to research and contest the legality of his conviction and

conditions of confinement.

134.     Despite Plaintiff's documented, preexisting medical restrictions/special needs,

Defendants have on numerous occasions and an ongoing basis denied Plaintiff the use of MCI-

Concord's first-floor library and reassigned him to an upper bunk in a non-handicapped cell on second-tier housing.

135.    During the same period, inmates with disabilities other than Plaintiff were allowed ready access to the first-floor library and assigned a handicapped cell on lower-tier housing.

136.    The disregard for and denial of Plaintiff's medical restrictions/special needs and the restrictions imposed on Plaintiff occurred in retaliation for Plaintiff's ADA-protected activity; namely, his requests for reasonable accommodations and equal access to activities, programs, and services at MCI-Concord for which he is otherwise qualified.

137.    As a result of Defendants' discrimination against and failure to provide reasonable accommodations to Plaintiff, Plaintiff does not have equal access to activities, programs, and services at MCI-Concord for which he is otherwise qualified.

138.    Plaintiff requests relief as outlined below.

## SEVENTH CAUSE OF ACTION

### (Rehabilitation Act of 1973, 29 U.S.C. § 794)

### Against Defendant DOC

139.    Plaintiff re-alleges and incorporates by reference herein all allegations pled in paragraphs 1 through 138 above.

140.    At all times relevant to this action, Defendant DOC received federal funding within the meaning of the RA.  As a recipient of federal funds, Defendant DOC must reasonably accommodate prisoners with disabilities in its facilities, program activities, and services.

141.    Plaintiff is a qualified individual with a disability as defined in the RA.

142.    By its policies and practices of discriminating against and failing to reasonably accommodate Plaintiff, as alleged herein, Defendant DOC have violated and are violating the RA.

143.    As a result of Defendant DOC's discrimination against and failure to provide reasonable accommodations to Plaintiff because of his disability, Plaintiff does not have equal access to activities, programs, and services at MCI-Concord for which he is otherwise qualified.

144.    Plaintiff requests relief as outlined below.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of an Order granting the following relief:

a.    enjoining Defendants, their agents, officials, employees, and all persons acting for or with them, under the color of state law or otherwise, from continuing the unlawful and unconstitutional acts and practices described herein;

b.    directing Defendants, their agents, officials, employees, and all persons acting for or with them, under the color of state law or otherwise, to: (1) implement as soon as practicable reasonable accommodations sufficient to enable Plaintiff to enjoy equal access to activities, programs, and services at MCI-Concord for which he is otherwise qualified, including but not limited to access to legal reference materials in MCI-Concord's first-floor library; and (2) return to Plaintiff as soon as practicable all medical appliances and supplies necessary to protect Plaintiff from further aggravation of his disability and physical impairments;

c.    awarding Plaintiff compensatory damages against Defendants, as well as nominal and presumed damages, as appropriate;

26

  d.  awarding Plaintiff punitive damages against Defendants;

  e.  awarding Plaintiff attorneys' fees and litigation expenses to the extent permitted by 29 U.S.C. § 794a and 42 U.S.C. §§ 1988 and 12205; and

  f.  an award to Plaintiff of such other and further relief as the Court deems just and proper.

Dated: December 20, 2016     Respectfully submitted,

           /s/ Jason L. Drori
           Jason L. Drori (BBO# 665865)
           FOLEY & LARDNER LLP
           111 Huntington Avenue, Suite 2600
           Boston, Massachusetts 02199
           T: 617.342.4000
           F: 617.342.4001
           jdrori@foley.com

           *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

  I hereby certify that on December 20, 2016, the above document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

           /s/ Jason L. Drori
           Jason L. Drori

27