## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

EMORY G. SNELL, JR.,

        **Plaintiff,**

    **v.**

CAROL MICI, STEPHANIE COLLINS,
JEFFREY QUICK, MONSERRATE
QUINONES, DOUGLAS DEMOURA,
LOIS RUSSO, DALE BISSONNETTE,
PATRICIA RUZE, GENE CHAISSION,
JOANN LYNDS, THOMAS NEVILLE,
THE MASSACHUSETTS DEPARTMENT
OF CORRECTIONS,

        **Defendants.**

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

    **Civil Action No.: 16-cv-11643-DJC**

## MEMORANDUM AND ORDER

**CASPER, J.**                                                           **September 11, 2019**

### I.    Introduction

      Plaintiff Emory G. Snell, Jr. ("Snell") has filed this lawsuit against Defendants Carol Mici

("Mici"), Stephanie Collins ("Collins"), Jeffrey Quick ("Quick"), Monserrate Quinones

("Quinones"), Douglas DeMoura ("DeMoura"), Lois Russo ("Russo"), Dale Bissonnette

("Bissonnette"), Gene Chaission ("Chaission"), Joann Lynds ("Lynds"), Thomas Neville

("Neville"), all in their individual and official capacities, and the Massachusetts Department of

Corrections ("DOC") (collectively, the "DOC Defendants") and Dr. Patricia Ruze ("Ruze")

(collectively, "Defendants"). D. 26. Snell is an inmate who was previously housed at the

Massachusetts Correctional Institution at Concord ("MCI-Concord"). Snell alleges that

Defendants violated his constitutional rights and various statutes by denying him an

accommodation allowing him to access a first floor library at MCI-Concord given various physical ailments that make it difficult for him to climb stairs.

Specifically, Snell alleges that Defendants violated his Eighth Amendment rights (Claim 1), his Fourteenth Amendment rights (Claim 2), his Fifth Amendment rights (Claim 3), his rights under Article of Amendment 114 to the Massachusetts Declaration of Rights pursuant to Mass. Gen. L. c. 151B, §1 and Mass. Gen. L. c. 93, § 103 (Claim 4) and that they retaliated against him in violation of the Americans with Disabilities Act ("ADA") (Claim 6). He further alleges that the DOC engaged in disability discrimination under Title II of the ADA (Claim 5) and violated his rights under the Rehabilitation Act (Claim 7). D. 26 at ¶¶ 93-144. The DOC Defendants and Ruze have separately moved for summary judgment. D. 113; D. 119. For the reasons set forth below, the Court ALLOWS Ruze's motion for summary judgment and ALLOWS the DOC Defendants' motion for summary judgment.

## II.    Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor," Borges ex rel. S.M.B.W. v. Serrano–

Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997). In conducting this inquiry, the Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

The following facts are drawn primarily from the DOC Defendants' statement of undisputed material facts, D. 114, Ruze's statement of material facts, D. 121, Snell's responses to same, D. 131 and D. 130, and other supporting documents and are undisputed unless otherwise noted.

Snell is currently incarcerated at MCI-Shirley. D. 130, ¶ 1; D. 131, ¶ 48. Snell was transferred to MCI-Shirley from MCI-Concord on November 8, 2018. D. 130, ¶ 2; D. 131, ¶ 48.

### A.    Accommodations Process at MCI-Concord

Medical providers at MCI-Concord evaluate inmates and can recommend that an inmate be granted a medical "restriction" [1] or an accommodation based on a legitimate medical need. D. 130, ¶ 15. The DOC will consider the recommendations of medical personnel, along with other factors, in deciding whether to grant an inmate an accommodation. Id. During the time that Ruze

---

[1] "Restriction" is a term of art used by the DOC to denote a recommendation by medical personnel based on an inmate's medical needs, such as medical equipment (i.e., a back brace or a cane), modifications to transportation (i.e., waist chain restraints instead of handcuffs), or modified work or living requirements (i.e., light work status, a bottom bunk, no stair climbing). See D. 131, ¶ 4.

treated Snell at MCI-Concord, it was the practice that medical restrictions would expire after one year, at which time they would be reviewed by a medical provider. D. 130, ¶ 14. Snell disputes that this was the practice, however, because in 1998 he was granted what he characterizes as an "indefinite" bottom-tier housing restriction based on "problems with climbing stairs." Id. at ¶¶ 12-14.

Pursuant to DOC policy, an inmate may request a reasonable accommodation through either a verbal or written request to a staff member or completion of a Request for Reasonable Accommodation form. D. 131, ¶ 6. The Deputy Superintendent for Entry serves as the ADA Coordinator for MCI-Concord, receives accommodation requests from inmates, communicates with medical providers and reviews restrictions to evaluate whether an accommodation is medically necessary. D. 130, ¶ 11.

**B.**     **Snell's History of Medical Issues and Treatment During Incarceration**

Snell was transferred to MCI-Concord on July 13, 2010. D. 130, ¶ 37. Ruze was then Snell's primary care physician at MCI-Concord for seven years. D. 130, ¶ 7; D. 131, ¶ 16. While incarcerated at MCI-Concord, Snell suffered from hypertension, obstructive sleep apnea, chronic obstructive pulmonary disease, degenerative joint disease, and intermittent pedal edema. D. 130, ¶ 9; D. 131, ¶ 17. Snell also experienced some injuries, including a rolled ankle, while at MCI-Concord. D. 130, ¶ 38. On May 31, 2011, when Snell rolled his ankle, Ruze examined an x-ray and determined that Snell had a "very tiny" fracture and issued him an air cast. D. 130, ¶ 38. Snell denied Ruze's offer of a cane at that time. Id. In January 2012, Ruze recommended that Snell be permitted to use an air cast for six months. D. 130, ¶ 39. In November 2012, a nurse practitioner at MCI-Concord evaluated Snell and recommended one-year restrictions for an air cast, knee sleeves, an elbow sleeve, and a low-back binder. Id. In October 2013, Snell met with another nurse practitioner at MCI-Concord who recommended that he exercise more and recommended

restrictions for an air cast, knee sleeves, an elbow sleeve and back brace be renewed for one year. D. 130, ¶ 42.

On two occasions in December 2013, Snell complained of pain in his knees and back due to stair climbing. D. 130, ¶ 44. Ruze ordered x-rays of Snell's knees and spine and recommended one-year extensions of Snell's restrictions for knee sleeves. Id. In December 2013, Snell complained of increased leg swelling and stated that he was limping more than usual. D. 130, ¶ 45. Ruze ordered a cane for Snell, ordered a change in medication and referred him to a specialist. Id. In July 2014, Ruze recommended one-year extensions of Snell's restriction for a cane and bottom bunk. D. 130, ¶ 49. In November 2014, Ruze recommended a one-year extension for a back brace. D. 130, ¶ 54. Snell met with another medical provider at MCI-Concord in March 2015 who recommended restrictions for a bottom bunk, back brace, cane, knee sleeves, anti-embolism stockings, light work status, and waist chains. D. 130, ¶ 58. The following year, on June 23, 2016, Ruze renewed all of the restrictions that were issued the prior year. D. 130, ¶ 18. Although Snell disputes her conclusion, at this time, Ruze also noted that Snell "ambulates well with a cane" and "can negotiate stairs." D. 130, ¶ 18; D 131, ¶ 39. In July 2017, a medical provider at MCI-Concord renewed his restrictions with the exception of the light work restriction. D. 130, ¶ 19.

## C. Snell's Use of the First Floor Library

From October 2011 through October 2012, Snell worked as a clerk in the law library on the second floor of MCI-Concord. D. 130, ¶ 23. Snell was fired from his job in this second floor law library. D. 130, ¶ 24. Snell began to use the first floor law library in July 2013. D. 131, ¶ 31. At the time, Snell did not have a medical restriction or accommodation that permitted him to use the first floor library instead of the general law library on the second floor. D. 131, ¶ 31. In

October 2015, it came to the attention of Defendants Gaffney and Lynds that Snell was using the first floor library. D. 131, ¶ 32. DOC personnel informed Snell that he was no longer permitted to use the first floor library because he did not have a medical restriction or accommodation. D. 130, ¶ 26; D. 131, ¶ 32.

Snell wrote to Defendant Gaffney claiming that he was being arbitrarily deprived of his constitutional right to court access and stated that the "indefinite" restriction he received in 1998 regarding use of the stairs warranted his access to the first floor library. D. 131, ¶ 35. Defendant Gaffney responded that she was unaware of an accommodation that had been granted to Snell that would permit access to the first floor library, but would review his situation if he provided necessary documentation. D. 131, ¶ 36. In June 2016, Snell submitted a request for reasonable accommodation seeking access to the first floor library to Defendant Neville. D. 131, ¶ 40. Defendant Neville denied the request, informing Snell that he had consulted the medical providers at MCI-Concord and that the request was not supported by this medical review. Id.

### D. **Transfer to MCI-Shirley**

Following Ruze's departure from MCI-Concord, Dr. Lawrence Churchville ("Churchville") became Snell's physician there. D. 131, ¶ 43. Churchville evaluated Snell in October 2018 and noted that his knees were "visibly deformed," that Snell had a slow gait, and that he used a cane to walk. Id. Churchville recommended exercise, medications, and diet. Id. At a subsequent evaluation four days later, Churchville noted that Snell suffered from crepitus (grinding) of the knee. D. 131, ¶ 44. On November 7, 2018, Snell complained of worsening knee pain and requested a renewal of his restrictions. D. 131, ¶ 45. This request was brought to Churchville, who reviewed Snell's medical record and considered his own examinations of Snell and determined that Snell now had severe osteoarthritis in both of his knees. D. 131, ¶ 46. In

November 2018, Churchville renewed Snell's existing restrictions and added restrictions for no stair climbing, first floor housing, knee sleeves, orthopedic shoes, and an elbow sleeve.  Id.

The Deputy Superintendent of MCI-Concord notified the DOC Director of Classification that medical staff at MCI-Concord had determined that Snell required a handicap-accessible facility.  D. 131, ¶ 47.  Based upon this need, Snell was transferred to MCI-Shirley, a handicap-accessible facility, on November 8, 2018, D. 131, ¶ 48, where it appears that he remains.

## IV.    Procedural History

Snell instituted this action on August 9, 2016.  D. 1.  Snell subsequently filed an amended complaint.  D. 26.  On August 23, 2017, while he was still at MCI-Concord, Snell sought a preliminary injunction seeking to require MCI-Concord to permit him access to the first floor library, to return all medical appliances he required for his disabilities and to reinstate his first floor housing and bottom bunk assignment.  D. 41.  The Court denied the motion, concluding that Snell had failed to show a reasonable likelihood of success on the merits or a risk of irreparable harm. D. 85.  The DOC Defendants and Ruze have now each filed separately for summary judgment.  D. 113; D. 119.  The Court heard the parties on the pending motions on July 17, 2019 and took these matters under advisement.  D. 139.

## V.    Discussion

### A.    Eighth Amendment Claim Pursuant to § 1983 (Claim 1)

The Eighth Amendment prohibition against cruel and unusual punishment protects prisoners from medical mistreatment that is "so inadequate as to shock the conscience."  Perry v. Roy, 782 F.3d 73, 78 (1st Cir. 2015) (quoting Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir. 1991)) (internal quotation marks omitted).   "Undue suffering, unrelated to any legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 103

(1976)).  "[T]o state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [Supreme Court case law] be condemned as the infliction of punishment."  Farmer v. Brennan, 511 U.S. 825, 838 (1994).

A plaintiff alleging an Eighth Amendment violation must prove that prison personnel showed deliberate indifference to serious medical needs by satisfying a two-part inquiry:  an objective test establishing that the plaintiff's need is "sufficiently serious," Burrell v. Hampshire Cty., 307 F.3d 1, 8 (1st Cir. 2002), and a subjective test showing that officers acted with intent or wanton disregard when providing inadequate care.  See Perry, 782 F.3d at 78; Leavitt v. Corr. Med. Servs., 645 F.3d 484, 502 (1st Cir. 2011).  To establish that his medical need is or was "sufficiently serious," under the objective prong, a plaintiff must show that his illness or injury was either diagnosed by a physician as requiring treatment or is so obvious that a layperson would recognize the need for medical assistance.  See Gaudreault v. Mun. of Salem, 923 F.2d 203, 208 (1st Cir. 1990).

Snell alleges that his orthopedic conditions are "sufficiently serious" because he has been "diagnosed by a physician as mandating treatment" and, further, that his condition was "so obvious that even a lay person could easily recognize the necessity" for treatment based on his need to use a cane when walking.  D. 132 at 22; Kosilek, 774 F.3d at 82.  Snell also alleges that he satisfies the subjective prong because Defendants were deliberately indifferent to Snell's medical needs when terminating his access to the first floor library, thereby requiring him to climb stairs to access the second floor library.  D. 132 at 24.

As to the objective prong, both Snell and Ruze submitted expert reports by physicians who each reviewed Snell's medical records (but did not examine Snell) and opined on the nature of Snell's condition and recommended treatment options.  D. 122-10; D. 122-11.  Ruze's expert, Dr. Ira K. Evans, summarized the diagnoses and treatment that Snell received while at MCI-Concord while treated by Dr. Ruze and concluded that Snell has "stage 1 arthritis of the knee, which is considered to be very mild," that none of Snell's medical conditions should preclude him from climbing stairs, that the care Snell received at MCI-Concord was consistent with accepted medical practice "and the decision by Dr. Ruze, and other providers, that he was capable of climbing stairs several times per week was in no way outside of the standard of care, nor did it aggravate any underlying degenerative changes."  D. 122-10 at 8-9, 10.  Snell's expert, Dr. Michael G. Kennedy, noted that Snell has degenerative joint disease in his knees, but did not provide an opinion as to the severity of the condition.  D.122-11 at 4-5, 6-7.  Dr. Kennedy suggested that Snell should have avoided climbing up and down stairs in or about late October 2015, since such action could "aggravate any underlying degenerative changes," but did not make any conclusions as to the quality of care that Snell received at MCI-Concord.  Id.

Even assuming *arguendo* that Snell could meet the objective prong or has raised a genuine issue of material fact regarding same, Snell fails to meet the subjective prong, as there is ample undisputed evidence demonstrating that Defendants were not "deliberately indifferent" to Snell's medical needs.  First, as noted above, even while agreeing with Dr. Ruze's assessment that Snell has medical needs, even Dr. Kennedy, Snell's expert, does not suggest that her treatment of Snell was inadequate.  Snell met with Ruze and other medical staff numerous times and received ongoing care and treatment for his knee and related conditions.  On this record, the Court does not conclude that Snell was denied medical evaluation or treatment while at MCI-Concord.  "[I]t is not the place

of [the] court to 'second guess medical judgments,'" Kosilek, 774 F.3d at 85, and "[s]ubstandard or negligent medical treatment, 'even to the point of malpractice,' is insufficient to state a claim under the Eighth Amendment." Sepulveda v. UMass Corr. Health Care, 160 F. Supp. 3d 371, 385 (D. Mass. 2016) (quoting Feeney, 464 F.3d 158 at 162 (1st Cir. 2006)). Moreover, the Court notes that there is no opinion—not from Dr. Kennedy, Dr. Evans or Dr. Churchill—that Snell received substandard or negligent care from Dr. Ruze or the other medical providers at MCI-Concord. That Dr. Kennedy had a different opinion about the recommendation for treatment for Snell's knees back in October 2015 or that Dr. Churchill had a different recommendation in late 2018 does not aid Snell's claim because "a mere professional difference of opinion among an inmate's doctors generally cannot give rise to liability under section 1983, both because the prisoner has no right to his preferred treatment and because a good-faith dispute among doctors over the appropriate course of treatment tends to show that neither doctor was deliberately indifferent to the prisoner's needs." Hennessy v. Dennehy, No. 08CV11724-NG, 2010 WL 3464234, at *8 (D. Mass. Sept. 1, 2010). Such is the case here.

Ruze treated Snell for approximately seven years. She evaluated Snell regularly, ordered x-rays and other diagnostic tests, recommended appropriate medical restrictions when she deemed them necessary, and provided Snell with medical devices to reduce pain and swelling. See, e.g., D. 130 at ¶¶ 37-78. That Ruze, in the course of treating Snell and based on her professional judgment, did not specifically recommend a "no stairs" restriction does not demonstrate that Snell received medical care below professional standards and does not "shock the conscious" sufficient to sustain an Eighth Amendment claim. Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 142 (1st Cir. 2014).

The DOC Defendants' denial of access to the first floor library based on Snell not having a "no stairs" restriction similarly does not rise to the level of deliberate indifference to Snell's medical needs. "Since most prison officials are not doctors, they cannot be said to have consciously disregarded an inmate's serious medical needs when they have relied in good faith on the expertise of the inmate's attending physicians." Hennessy, 2010 WL 3464234, at *8; see Costa v. Massachusetts P'ship for Corr. Healthcare, LLC, No. CV 17-12201-RGS, 2018 WL 3769823, at *2 (D. Mass. Aug. 8, 2018) (stating that prison officials are permitted to rely on the opinions of treating physicians and denying an Eighth Amendment claim against prison officials where plaintiff failed to demonstrate that they ignored the medical judgments of medical personnel). The record indicates that the DOC Defendants relied upon the medical judgment and recommendations of Ruze and other medical personnel in granting and denying certain restrictions and accommodations to Snell based on his medical needs. To the extent that Snell disagreed with Ruze's recommendations and course of treatment, there is no requirement that "prison administrators . . . provide care that is ideal, or of the prisoner's choosing." Kosilek, 774 F.3d at 82. Accordingly, the Court grants the DOC Defendants' and Ruze's motions for summary judgment with respect to Snell's Eighth Amendment claim.

**B.      Fourteenth Amendment Claim (Claim 2)**

Snell includes a Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 as his second claim in the amended complaint against all Defendants. D. 26. The allegations in the amended complaint supporting the Fourteenth Amendment claim are similar to those alleged in support of the Eighth Amendment claim. D. 26, ¶¶ 103-108 (alleging that "Defendants have subjected and are subjecting Snell to a substantial risk of harm and injury from the denial of reasonable accommodations and deliberate indifference to Snell's documented disability and physical impairments"). In his opposition to summary judgment, however, Snell frames his Fourteenth

Amendment claim based on a theory of denial of access to legal resources because his access to the first floor library was terminated.  D. 132 at 32-33.  Courts have found that the protections under the Fourteenth Amendment and Eighth Amendment pursuant to section 1983 are "essentially coextensive."  Hernandez v. Ashe, 745 F. Supp. 2d 15, 21 (D. Mass. 2010) (citing Whitley v. Albers, 475 U.S. 312, 327 (1986); Ruiz-Rosa v. Rullan, 485 F.3d 150, 155 (1st Cir. 2007)).  To the extent Snell's Fourteenth Amendment claim relies on the same facts as he relies upon for his Eighth Amendment claim, the Court grants summary judgment in favor of Defendants for the same reasons as applicable to that claim discussed above.

To the extent that Snell's Fourteenth Amendment claim is based upon a separate allegation that he was denied access to the courts, this claim fails because Snell has failed to show that he was harmed or will imminently suffer harm based upon this alleged denial.  Snell argues that, during the time when he was denied access to the first floor library, he was not represented by counsel and relied upon access to the law library to challenge his criminal conviction.  D. 132 at 32.  In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court emphasized that inmates bringing claims based on denial of access to courts must allege a resulting injury.  Id. at 350-51.  The Court stated that inmates do not have a "freestanding right to a law library or legal assistance" and an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  Id. at 351.  By way of example, the Court noted that an inmate "might show . . . that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known . . . [or] that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint."  Id.  Snell has failed to allege any specific harm resulting from the DOC's

termination of his access to the first floor law library.  As a result, summary judgment is granted in favor of all Defendants on Snell's Fourteenth Amendment claim.

### C.    Fifth Amendment (Claim 3)

Defendants argue that Snell's Fifth Amendment claim must be dismissed because Fifth Amendment claims relate only to actions by federal actors.  D. 115 at 33; D. 120 at 13-14.  Snell failed to address these arguments in his opposition to the motions for summary judgment.  D. 132. At oral argument, Snell's counsel confirmed that Snell is no longer pursuing the Fifth Amendment claim.  For all of these reasons, the Court ALLOWS summary judgment in favor of Defendants as to Snell's Fifth Amendment claim.

### D.    The ADA and Rehabilitation Act Claims (Claims 5-7)

#### 1.    ADA and Rehabilitation Act Claims (Claims 5 & 7)

Snell has alleged that Defendant DOC violated Title II of the ADA and the Rehabilitation Act because it failed to provide him with a reasonable accommodation to access the first floor library to conduct legal work.  D. 132 at 25-27.  "The same standards . . . apply to claims under the ADA and under the Rehabilitation Act."  Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 11 n.1 (1st Cir. 2004).  The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The Rehabilitation Act similarly provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  "Where, as here, a plaintiff raises essentially identical claims under the ADA and the Rehabilitation Act and those

claims do not turn on any of the various differences between the two statutory schemes, courts are free to address the claims 'simultaneously.'" McCauley v. Groblewski, No. 14-CV-12732, 2018 WL 4119641, at *8 (D. Mass. Aug. 29, 2018) (quoting Partelow v. Massachusetts, 442 F. Supp. 2d 41, 47 (D. Mass. 2006)). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102.

Public entities are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7)(i). An ADA claim requires that the plaintiff prove: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in, or denied the benefits of some public entity's services, programs or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006) (quoting Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000)) (internal quotation marks omitted).

Although Ruze determined that Snell's condition did not require a "no stairs" restriction, she did diagnose Snell with "chronic orthopedic issues," including "arthritis . . . of the knees, ankles, and back" and ordered him a cane and various braces to assist with ambulation. D. 121, ¶ 64. Following Ruze's departure from MCI-Concord, Churchville evaluated Snell and diagnosed him with "severe osteoarthritis in both knees." D. 121, ¶ 77. In Shedlock v. Dep't of Corr., the Supreme Judicial Court analyzed whether an inmate who needed a cane to walk was disabled for the purposes of a disability claim. Shedlock v. Dep't of Corr., 442 Mass. 844, 851-855. The court noted that "in cases where a plaintiff uses some device to assist with walking and climbing (e.g.,

a cane, brace, or crutches), most courts have found a substantial limitation on the activity of walking." Id. at 851 (citing EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 439 (7th Cir. 2000); Belk v. Southwestern Bell Tel. Co., 194 F.3d 946, 950 (8th Cir. 1999); Saunders v. Horn, 959 F. Supp. 689, 692 (E.D. Pa. 1996)). Shedlock further stated that "from the very fact that [Plaintiff] needs a cane in order to walk, one could infer that his ability to walk without a cane is extremely limited" and that, in the context of a prison, an inference can be made that an inmate had to demonstrate a genuine need for a cane before one would be issued given the security concerns inherent in providing a cane to an inmate. Id. at 853-54. Given that Snell was issued various medical devices to assist with walking, including a cane, he at least arguably qualifies as an individual with a disability under the ADA and the Rehabilitation Act.

Although Snell likely qualifies as an individual with a disability under the ADA, he has failed to show that any alleged exclusion from the first floor law library was because of his disability. To make out a successful claim under the ADA and Rehabilitation Act, "a plaintiff's showing of medical unreasonableness . . . must be framed within some larger theory of disability discrimination." Kiman, 451 F.3d at 285 (quoting Lesley v. Chie, 250 F.3d 47, 55 (1st Cir. 2001)). "When the decision being challenged is simply a reasoned medical judgment with which the patient disagreed, it is more appropriate for the patient to turn to state medical malpractice law, not [the ADA]." Id. (internal quotation marks omitted) (alteration in original). That is, similar to Snell's constitutional claims, prison officials may rely upon medical personnel's determination of whether a medical accommodation is warranted. See Bane v. Virginia Dept. of Corr., No. Civ. A. 705-cv-00024, 2005 WL 1388924, at *4 (W.D. Va. June 9, 2005) (noting that, among other things, "[p]rison officials may reasonably require the inmate to obtain medical confirmation of the alleged need for accommodation"). Rather, the DOC Defendants relied upon the recommendations of

medical personnel who determined that Snell did not require a "no stairs" restriction, in deciding to terminate Snell's access to the first floor library. Additionally, there are no facts indicating that the medical treatment that Snell received, or the recommendations made by Ruze and other medical personnel, were based on any discriminatory animus. As there has been no showing of discrimination based on Snell's disability, summary judgment is granted in favor of Defendants. Sepulveda, 160 F. Supp. 3d at 392 (dismissing ADA claim based on inmate's allegations of inadequate medical treatment where inmate failed to show "discriminatory animus" or that the medical providers' "treatment decisions rested on stereotypes about [inmate's] conditions").

### 2. *Retaliation Claim (Claim 6)*

To establish a retaliation claim under the ADA a plaintiff must show that "(1) he engaged in protected conduct, (2) he was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action." Knox v. Mass. Dep't of Corr., No. 1:14-cv-12457-LTS, 2017 WL 3401443, at *12 (D. Mass. Aug. 8, 2017) (citing D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012) (internal citations omitted)); see 42 U.S.C. § 12203(a). "Once a plaintiff makes such a showing, the burden shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse action." Knox, 2017 WL 3401443 at *12. "If the defendant articulates such a reason, the burden shifts back to the plaintiff to show that the proffered legitimate explanation is pretextual, meaning that the defendant was motivated by a retaliatory animus." Id. (citing D.B. ex rel. Elizabeth B., 675 F.3d at 41) (internal quotation marks omitted).

Snell argues that the termination of his access to the first floor library was retaliation for his "long history of initiating grievances and litigation concerning his disabilities." D. 132 at 30. The record does not support Snell's contention that the termination of Snell's access to the first

floor library was connected to any of his previously filed grievances or litigation or to the frequency of his prior complaints. The undisputed record reveals, however, that Defendants Gaffney and Lynds became aware that Snell was using the first floor library because he sent a letter to Defendant Gaffney requesting additional time to use the first floor library. Defendants Gaffney and Lynds then reviewed Snell's restrictions record and determined that Snell was not permitted to use the first floor library because he did not have a medical "no stairs" restriction in his file and, therefore, was required to use the law library located on the second floor. D. 114, ¶ 32.

Snell argues that this reasoning is simply pretextual because, once he was given a "no stairs" medical restriction by Churchville, he was immediately transferred to MCI-Shirley. This argument is unavailing. "Within the prison system, officials may legitimately desire to screen . . . requests and verify that an accommodation is genuinely needed before a prisoner is accorded what other prisoners would likely view as special treatment." Shedlock, 442 Mass. at 857. It is "reasonable for prison officials to rely on the contents of medical orders . . . and to insist that those medical orders be updated or modified before extending . . . additional accommodations." Id. at 858. Here, Snell did not have a medical "no stairs" restriction and it was reasonable for the DOC Defendants to terminate Snell's access to the first floor library once they were made aware of his use of it on the basis that he did not have the required medical restriction stating that he was unable to climb stairs to the other law library. That his access was terminated after previous grievances and requests for additional time in the library is insufficient to show retaliation on summary judgment. Partelow, 442 F. Supp. 2d at 52 (discussing plaintiff's argument that a transfer occurred shortly after plaintiff engaged in a protected action and stating "[t]he mere chronology . . . while sufficient to withstand a motion to dismiss, cannot get plaintiff to the jury once defendants have

produced evidence of a legitimate reason"). Even assuming that Snell had satisfied his prima facie case as to this claim, he has not shown that the non-retaliatory reasons offered by DOC Defendants for terminating his access to the first floor library was pretextual, motivated by retaliatory animus.

As to Ruze, Snell argues that she "participated in retaliation against Mr. Snell." D. 132 at 31. This allegation is based on a note that Ruze added to Snell's medical record indicating that he did not require a "no stairs" restriction. Id. In June 2016, Prisoners' Legal Services contacted the DOC on behalf of Snell, discussing his position that he should be granted access to the first floor library based on his disability. D. 132 at 8, 31. DOC personnel then discussed the issue with Ruze and, shortly thereafter, she entered a note in Snell's electronic medical record stating that he was "well known to [her]," that he "currently ambulates well [with a] cane," and that, in her opinion, he could "negotiate stairs." D. 132 at 10, 31. As discussed above, the DOC Defendants have provided an unrebutted, non-retaliatory explanation for terminating Snell's access to the first floor library. The record indicates that the DOC, upon receiving the letter from Prisoner's Legal Services, reached out to the medical personnel at MCI-Concord to confirm whether Snell was able to access the second floor library. D. 132 at 9. Ruze confirmed that Snell was able to access the second floor library and did not need a "no stairs" restriction, adding a notation to his record documenting this opinion. D. 132 at 10. Further, Snell has acknowledged that medical personnel at MCI-Concord, including Ruze, do not have the authority to determine whether an inmate has access to the first floor library. D. 132 at 19. Snell has failed to show that Ruze took any adverse action against him or that any actions Ruze took against him were related to his participation in protected activity.

### E.      State Law Claims (Claim 4)

Article 114 of the Massachusetts Declaration of Rights provides that "[n]o otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth." Shedlock, 442 Mass. at 852; Carleton v. Commonwealth, 447 Mass. 791, 811 (2006). Actions to enforce rights under Article 114 are brought pursuant to Mass. Gen. L. c. 93, § 103. Shedlock, 442 Mass. at 852 n.6. The term "qualified handicapped individual" is not defined, but Mass. Gen. L. c. 93, § 103 cross-references the definition of "handicap" in Mass. Gen. L. c. 151, § 103 and the term has been accorded the same meaning as "disability" in the Rehabilitation Act. Id. at 852 (citing Layne v. Superintendent, Mass. Correctional Inst., Cedar Junction, 406 Mass. 156, 159 (1989)).

Given the parallels between the Article 114 claim and the ADA and Rehabilitation Act claims, see Marlon v. W. New England Coll., 124 F. App'x 15, 17 (1st Cir. 2005), the state law claim pursuant to Mass. Gen. L. c. 93, § 03 fails for the same reasons, discussed above, that the ADA and Rehabilitation claims fail.

The Title II ADA claim and the Rehabilitation Act claim were not brought against Ruze and, therefore, it is necessary to discuss her alleged liability under Article 114. Ruze argues that she is not liable because Snell is not handicapped and, even if he were, she did not discriminate against him by excluding him from a program or activity. D. 120 at 14-15. Snell argues that Ruze discriminated against him when she discussed Snell's medical status and request for a "no stairs" restriction with DOC personnel, who then denied Snell access to the first floor library. D. 132 at 28-29. Snell has conceded, however, that Ruze has no authority to determine whether an inmate is granted an accommodation and, thus, whether he has access to a program. As Snell concedes,

the role of medical professionals is only to enter restrictions on an inmate's record, whereas DOC personnel assess these restrictions to approve or deny a specific accommodation to an inmate. D. 131, ¶ 11; D. 132 at 18. As a result, Ruze was not responsible for allowing or denying Snell access to the first floor library. Ruze determined that Snell did not require a "no stairs" restriction, but it was up to DOC personnel to evaluate Snell's record to determine whether to grant him an accommodation allowing him to access the first floor library.[2] Therefore, summary judgment is granted in favor of Ruze as to Claim IV.[3]

### F.     Mootness as to the Injunctive and Declaratory Relief Sought

Defendants also argue that Snell's claims for declaratory and injunctive relief are moot because, as of November 8, 2018, Snell was transferred from MCI-Concord to MCI-Shirley, a handicap-accessible facility. D. 131, ¶ 1. Snell argues that the claim for injunctive relief is not moot because the injuries are "capable of repetition yet evading review." D 132 at 36. Snell argues that the restrictions issued by Churchville is set to expire on November 8, 2019 and, thus, the restriction that warranted Snell's transfer to MCI-Shirley would no longer be valid and he could be transferred to another facility that is not handicap-accessible. Id. The one-year restriction limit is meant to allow medical personnel to evaluate and accommodate changes in inmates' medical conditions. The record indicates that inmates' restrictions are reviewed during regular medical evaluations and once the restrictions are set to expire. D. 131, ¶ 9. That Snell's restrictions, still in effect, could be revoked upon review and that he would then be transferred to a facility where

---

[2] Ruze also argues that she is entitled to summary judgment because Snell failed to exhaust all administrative remedies with respect to the claims brought against her. D. 120 at 4-6. As the Court has found that she is entitled to summary judgment on such claim on other grounds, it is unnecessary to address this argument.

[3] The individual DOC Defendants and Ruze also argue that they are entitled to qualified immunity. D. 115 at 40-41; D. 120 at 19. Since the Court has now allowed summary judgment as to the claims against them on substantive grounds, the Court does not reach this issue.

he could be denied access to programs on the basis of his disability is too speculative to determine that Snell's injuries are "capable of repetition yet evading review." Shaheed-Muhammad v. Dipaolo, 138 F. Supp. 2d 99, 106 (D. Mass. 2001) (holding that "[t]he possibility of future harm based only on prior injury and the organization of the Massachusetts prison system is too remote to overcome the mootness doctrine."). Snell's claims seeking declaratory and injunctive relief, therefore, are also denied as moot based on his transfer to MCI-Shirley, a handicap-accessible facility.

**VI.    Conclusion**

For the foregoing reasons, the Court ALLOWS the DOC Defendants motion for summary judgment, D. 113, and ALLOWS Ruze's motion for summary judgment, D. 119.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge